### HAMMERSTEIN v. TETRAZZINI.

(Circuit Court, S. D. New York. December 5, 1910.)

INJUNCTION (§ 155*)—PRELIMINARY INJUNCTION — RESTRAINING BREACH OF CONTRACT.

On an application for a preliminary injunction to restrain defendant, who was a professional singer, from singing in the United States during the ensuing operatic season for any person except complainant in compliance with a contract between the parties, where the affidavits were conflicting as to all questions of fact in issue, the principal one being as to whether complainant had exercised the option of renewal given him by the contract which was executed two years before and where it was shown that defendant had entered into a contract with another for the coming season, an injunction was refused on condition that defendant deposit one-half her receipts under the new contract to abide the result of the suit, and to answer any judgment which might be recovered by complainant for breach of his contract.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 339; Dec. Dig. § 155.*]

In Equity. Suit by Oscar Hammerstein against Luisa Tetrazzini. On motion for preliminary injunction. Motion denied on conditions.

Application for a preliminary injunction to restrain defendant, pending the determination of the suit, from appearing or singing, or advertising her performance as a performer or singer, in any opera, concert, or theatrical performance at any place within the United States for any person other than complainant during the operatic season of 1910–1911. A restraining order was issued with the order to show cause on which this hearing was had.

House, Grossman & Vorhaus, for complainant.
Towne & Spellman, for defendant.

LACOMBE, Circuit Judge. The controlling question in the case is whether the option of renewal for the season of 1910–1911 given by the contract of 1908 to complainant was availed of by him, so as to continue the contract in force for the present season.

Complainant alleges that notice of renewal was given by him to defendant personally in February, 1910, and was then accepted by her.

It is stated that such notice was in writing, but no copy was kept, so that the affirmative of the proposition is supported only by the recollection of complainant and his son. Defendant and her agent flatly deny the giving or receiving of such notice at that time. This particular controversy need not now be determined, because the contract is silent as to when the notice should be given, and, if given a reasonable time in advance of the preparation for a new season, it would be a sufficient compliance with the terms of the contract. The circumstance that on two prior occasions notice of renewal was given in February is hardly sufficient to establish a practical construction of the contract by action of the parties restricting the exercise of the option to that date. But, if it were, the affidavits submitted by defendant show clearly that she waived any insistence upon the exercise of the right of option at that early date, and agreed to postpone the same to a later time.

On April 26, 1910, complainant made the contract with representatives of the Metropolitan Opera House, assigning all his contracts with "artists," subject, of course, in the case of personal contracts, such as this, to the artist's consent to the transfer. When the terms of that contract were made public in the newspapers defendant and her agent were in London. They thereupon sent to defendant, at his New York address the following cablegram:

"London May 4th. 1910.

"Oscar Hammerstein: Following news published by newspapers that you cease to do opera business, please to announce me that I am free from your contract. Tetrazzini."

To this the following reply was sent and received:

"New York May 5th. 1910.

"Tetrazzini: You are still under our management. Will see you in London in three weeks and will direct you where you will sing here next season. "Oscar Hammerstein."

This cablegram was sent by complainant's son, who held full power of attorney to act for his father.

If these exchanged cablegrams were all the evidence on the question of renewal of the contract, this motion could be easily disposed of. The objections raised as to the "passages from Paris to New York and return" and as to the advance payment seem unimportant. But there is additional evidence as to what took place between the parties, or their respective agents, subsequent to May 5th. At that time it happened that complainant was himself in London, and there received a letter from defendant's agent in substance the same as the cablegram of the same date. To this complainant replied under date of May 6th, saying:

"In regard to your contract, I can tell you the following: The Metropolitan Company will take over the contract I have with you as per written agreement which I received yesterday from my lawyer. A representative of the Metropolitan Opera Company is coming here to arrange further particulars with the members that are to join their staff."

The letter also stated that within a week complainant would call in person; and on or about May 10th there was an interview in London between the parties and defendant's agent.

Although the option was exercised and the contract made binding by the cablegram from New York, the complainant could, of course, with the consent of defendant, withdraw his notice of renewal, and either decline to renew or leave the matter open till some future date. It is the contention of defendant that at this interview complainant practically canceled and withdrew the notice of renewal, which his agent had cabled, and from that time on, through a long series of negotiations, never again exercised his option, but, on the contrary, led defendant to believe that, unless she could make some agreement with the Metropolitan Company satisfactory to herself, she would be free to make other arrangements for her professional appearances in the United States during the coming season; thereupon she signed a contract with Mr. Leahy for 30 concerts at $2,500 per concert.

All of this (except the signing of the Leahy contract) is flatly denied by complainant. As is usual in these cases, the affidavits submitted by the respective parties are in direct contradiction not only on the substantial facts, but on the subsidiary facts asserted by one side or the other as corroborative of its narrative of the transactions. What writings there are subsequent to May 5th are susceptible of interpretation consonant with the theory of either side. It is unnecessary to undertake to rehearse the testimony. Such a controversy of fact cannot safely be decided on such conflicting ex parte affidavits. It must be left for the trial court, after cross-examination, to determine at final hearing. All that can be done here, is to secure the respective parties as far as may be possible in accordance with equitable principles, so that the one who shall finally prevail may find success substantial in results. If complainant were granted preliminary injunction precisely as prayed for, he would practically be securing judgment in advance of trial and meanwhile defendant would be exposed to the payment of such heavy damages for the breach of her contract with Mr. Leahy that, even if she should finally prevail in this suit, she might really be a loser. On the other hand, if complainant were refused all injunctive relief and relegated solely to his claim for damages for breach of contract, he might, if ultimately successful, find himself with a judgment which he could not collect, since defendant is a bird of passage and may not be here when the case, probably many months hence, is finally decided. In view of all these circumstances, it seems the most equitable course to dispose of this motion as follows.

Complainant may take an injunction as prayed in the bill, unless defendant shall stipulate that one-half of all moneys received under the Leahy contract shall forthwith upon receipt be deposited as an interest-bearing fund in some trust company in this city, to await the final disposition of this suit. If the parties cannot agree upon a trust company, the court will select one. Defendant shall also file monthly sworn statements of moneys received under that contract.

In the event of failure by defendant to file any such statement or to deposit any such money, the court will entertain an application by complainant to modify the provisions of this order.

In the event of complainant unreasonably delaying to prosecute this case to final hearing, the court will entertain a similar application by defendant.